**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELIZABETH SWATT and ANNE MARIE SWATT, | No. 4:21-CV-01025 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| JANICE M. HAWBAKER, ESQ., and KAMINSKI, HAWBAKER & SALAWAGE, P.C., | |
| Defendants. | |

**MEMORANDUM OPINION**

**SEPTEMBER 23, 2022**

Plaintiffs, two heirs of two decedents who were sisters, have sued Defendants, decedents' estate planning lawyer and her law firm, for various claims arising out of Defendants' performance in planning and administering the decedents' estates. Defendants now move to dismiss these claims on various grounds. They alternatively request that the Court abstain and stay the federal litigation pending resolution of parallel state court litigation.

The Court finds that the subject matter of this dispute is the subject of state court litigation—which has been ongoing for several years—between the same parties. Furthermore, some aspects of Plaintiffs' Complaint call for the Court to administer the decedents' estates or distribute estate property. The Court concludes it has no jurisdiction to hear such claims. As for the other claims, the Court finds

that the exceptional circumstances present here warrant the Court's abstention in deference of the ongoing state court proceedings.   Accordingly, the Court grants Defendant's motion to dismiss in part and grants Defendants' motion for a stay.

## I.   BACKGROUND

### A.   Engagement of Defendants for estate Planning Services

Madlyn Blusius became a client of attorney Janice Hawbaker of Kaminski, Hawbaker & Salawage, P.C. (Defendants) in 1997 and remained so until her death on January 5, 2012.[1]  Agnes Kotran, Blusius' sister, became a client of Hawbaker in 2000 and remained so until her death on January 29, 2005.[2]   Both sisters ("Decedents") engaged Defendants for estate planning and administration services.[3] Defendants misrepresented their experience in estate planning and held themselves out to be "specialists" in estate planning.[4]

From the very beginning, Defendants faced conflicts of interest in representing both Decedents.[5]  These conflicts arose because although Decedents had joint assets, their estate plans conflicted.   Defendants failed to obtain the necessary waivers to continue their representation of Decedents.[6]

---

[1]   Compl. Doc. 22 ¶ 19.
[2]   *Id.* ¶ 20.
[3]   *Id.*
[4]   *Id.*
[5]   *Id.* ¶¶ 21-23.
[6]   *Id.* To illustrate the conflict, Plaintiffs point out that both Decedents jointly owned several bank accounts but had conflicting plans for how to devise that jointly owned money to their heirs. *Id.*  Upon Kotran's death, the joint assets would automatically transfer to Blusius, frustrating any plans Kotran had for those assets.

## B.     The Kotran estate

From 2000, when she became Defendants' client, to 2005, when she died, Kotran was in poor health and in need of a power of attorney ("POA").[7]  In 2000, Defendants allowed Blusius, who was allegedly incompetent herself due to health issues, to act for Kotran pursuant to a POA.[8]  Defendants failed to perform the necessary due diligence and thus were unaware of Blusius' diminished capacity and inability to act for Kotran.[9]  They further failed to properly advise Blusius on how to act in accordance with Kotran's wishes.

In 2003, Kotran requested that her will be changed to provide for equal shares to all her heirs.[10]  Defendants did not provide her with proper advice and instead "exerted undue influence" over her, causing her to create a will that did not conform to her stated goals.[11]  Kotran's 2003 will did not provide for equal shares to all heirs because a substantial portion of Kotran's assets were in joint accounts and because Blusius, acting pursuant to the POA, gifted away assets without proper authorization.[12]  These gifts reduced Kotran's estate by over $600,000 and served to pay Blusius' nursing home bills.[13]  Defendants also failed to apply Blusius'

---

[7]   *Id.* ¶ 25(a).
[8]   *Id.* ¶ 25(b).
[9]   *Id.* ¶¶ 25(c)-(d), 25 (h).
[10]  *Id.* ¶ 26.
[11]  *Id.*
[12]  *Id.* ¶¶ 27(a)-(d).
[13]  *Id.* ¶¶ 27(a)-(d); 53.

insurance coverage through Medicare and Medicaid to these bills, which would have prevented the use of funds from Kotran's estate.[14]

After Kotran's death, Defendants, now acting as the self-appointed executors of Kotran's estate, "interfered with the distribution" of the estate from 2006 onwards and "refused to provide any more inheritance" to the heirs, despite their promises to do so.[15] As a consequence, each heir received $50,000 instead of the $250,000 they would have received had the will been drafted according to Kotran's wishes.[16]

Defendants also failed to notify Kotran's heirs of their rights or provide the heirs an accounting of Kotran's estate, in violation of Pennsylvania laws.[17] They misrepresented to Kotran's family that they had marshalled all of Kotran's assets and did not notify any family members of Kotran's incompetence.[18] Additionally, they failed to recover many of Kotran's assets, including jewelry, clothing, securities, and other property.[19] They filed incorrect inheritance tax returns on behalf of Kotran.[20] At the time they filed their Complaint, Plaintiffs had not received their

---

[14] *Id.* ¶ 53.
[15] *Id.* ¶ 27(f).
[16] *Id.* ¶¶ 27(g)-(i).
[17] *Id.* ¶¶ 28-31.
[18] *Id.* ¶¶ 32-34.
[19] *Id.* ¶ 51(d).
[20] *Id.* ¶ 37.

inheritances from Kotran's estate.[21]  The probate litigation over the Kotran's estate is ongoing.[22]

### C.    The Blusius estate

Blusius had also requested that Defendants draft a will for her that split her assets equally among her heirs—specifically into shares of $20,000 for each heir.[23] Defendants informed Blusius that such a disposition was not possible due to the assets Blusius held jointly with Kotran, but did nothing to remedy the situation and still drafted a will with equal shares despite knowing that such a disposition was not possible.[24]  Defendants then probated the incorrect will, requesting that each heir take a $14,000 share as opposed to the intended $20,000 share.[25]

Between 2000 and 2005, Defendants allowed Blusius to execute three new wills, none of which conformed to her stated wishes.[26]  Defendants did so despite knowing that Blusius was incompetent during that period and that none of these wills conformed to her stated wishes.[27]  During the same period, Defendants allowed Blusius to make gifts while incompetent, causing losses to Kotran's estate.[28]

---

[21]  *Id.* ¶ 6(b).
[22]  That litigation is docketed as *In re: estate of Agnes Kotran*, No. 134-OC-2006, before the Honorable Shawn D. Myers, in the Orphans' Court Division of the Court of Common Pleas of Franklin County, Pennsylvania.
[23]  *Id.* ¶ 39.
[24]  *Id.* ¶¶ 40-41.
[25]  *Id.* ¶ 41(e).
[26]  *Id.*
[27]  *Id.* ¶ 41(j).
[28]  *Id.*

Defendants further failed to invest cash held by the Blusius estate into interest-bearing investments.[29]

Despite Blusius' requests, Defendants did not file a POA in favor of her family members and did not inform the family members of those requests or of Blusius' deteriorating condition.[30]   Defendants exerted undue influence over Blusius to prevent Blusius' family from learning anything about her finances, all the while earning fees.[31]

In 2005, Defendants arranged for Andrea Reed, who appears to be related to Blusius and Kotran, to be as given authority pursuant to a POA to act for Blusius.[32] However, Reed improperly made payments to the Defendants before the POA was filed, which Defendants have refused to address or remedy.[33]   Reed, apparently acting as Defendants' agent, also failed to keep a proper accounting of the Blusius estate and made unauthorized gifts of estate assets to herself.[34]   Defendants further allowed Reed to use Blusius' home rent-free for seven years rather than selling it as Blusius had wished.[35]   Reed's use of the home required $10,000 in repairs due to her

---

[29]   *Id.* ¶ 51(a)-(c).
[30]   *Id.* ¶¶ 41(l), 41(n)-(p).
[31]   *Id.* ¶ 41(m).
[32]   *Id.* ¶ 45.
[33]   *Id.* ¶ 45(a).
[34]   *Id.* ¶¶ 44(a)-(k), 63, 66-68.
[35]   *Id.* ¶ 65.

neglect.[36]  Defendants also engaged and compensated other counsel despite court orders requiring court approval before legal fees could be paid.[37]

After Blusius died, Defendants probated her 2005 will in Franklin County, instead of the correct venue—Northumberland County, where Blusius resided before her death.[38]  Defendants attempted to probate Blusius' 2005 will without notifying all the intestate heirs, in violation of court rules.[39]  In response, Plaintiffs filed a caveat to stop the probate of the will in Franklin County.[40]

In the ensuing probate litigation, Plaintiffs showed through expert testimony that Blusius was incompetent when she executed the 2005 will, and was likely incompetent beginning in 2000.[41]  As a result, Defendants withdrew the 2005 will and sought to probate Blusius' 2003 will.[42]  Plaintiffs requested to file a caveat to the 2003 will, seeking to have Blusius' original 1962 will probated.[43]  Due to the probate of the incorrect will, Plaintiffs have lost $500,000 which they would have received under the 1962 will.[44]  Defendants continue to probate the 2003 will.[45]

---

[36]  *Id.* ¶ 66.
[37]  *Id.* ¶ 64.
[38]  *Id.* ¶ 42.
[39]  *Id.* ¶ 43(a)
[40]  *Id.* ¶ 43.
[41]  *Id.* ¶¶ 43(a)-(c).
[42]  *Id.* ¶ 43(d).
[43]  *Id.* ¶¶ 42(e)-(n).
[44]  *Id.* ¶ 43(o).
[45]  *Id.* ¶¶ 69-70.

Throughout the probate process, Defendants failed to properly account for Blusius' estate's assets.[46]  Defendants' failures also impeded the estate from bringing a survival action against her nursing home, as her heirs failed to obtain the necessary medical records, resulting in the estate's failure to file a timely complaint.[47]  Plaintiffs have still not received their inheritances from Blusius' estate.[48]  Probate litigation over the Kotran estate is ongoing.[49]

### D.     Further State Court Litigation and Settlement Agreement

In addition to the ongoing probate matters, Plaintiffs sued Defendants in the Franklin County Court of Common Pleas in 2014.[50]  Plaintiffs' state court complaint includes several claims against Defendants for their failures in planning and administering Decedents' estates.[51]   It appears that both probate matters were consolidated with Plaintiffs' civil action.

On March 19, 2018, Plaintiffs and Defendants entered into an agreement to settle all of Plaintiffs' state court claims.[52]  In relevant part, Plaintiffs agreed to

---

[46]   *Id.* ¶¶ 44, 57-62, 66.

[47]   *Id.* ¶¶ 45(l)-(n).

[48]   *Id.* ¶ 6(a).

[49]   That litigation is docketed as *In re: estate of Madlyn Blusius*, No. 46-OC-2013 in the Franklin County Orphans' Court before President Judge Myers.

[50]   That litigation is docketed as: *Swott et al. v. Hawbaker et al.*, No. 2014-710 in the Franklin County Orphans' Court before President Judge Myers.  *See* Doc. 15-1.

[51]   *See* Doc. 24-1.  Although the parties have styled the state court action as a legal malpractice action, it does not appear that legal malpractice is alleged in the complaint.  *Compare Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 616 (3d Cir. 1991) (explaining the elements of legal malpractice under Pennsylvania law), *with* Doc. 24-1 ¶¶ 73-164.  However, this distinction is immaterial to the Court's analysis.

[52]   Doc. 12.

fully release and discharge, . . . release, acquit and forever discharge [Defendants] . . . of and from any and all past, present and future actions, causes of action, . . . claims, demands, challenges, caveats, damages, third party claims or actions asserted by or through [Plaintiffs], costs, losses of service, expenses, compensation, suits at law or in equity or otherwise including claims or suits for joinders, for sole liability, contribution, indemnity and also to the extent of the liability for contribution to other tortfeasors or otherwise, of whatever nature, and all consequential damages on account of or in any way arising out of any and all known and unknown injury and/or damage resulting from or to result from the injury or damage alleged to have been incurred by [Plaintiffs] due to legal representation, counsel, advise or otherwise by any action or omission of [Defendants], individually and/or collectively, including but not limited to all matters set forth in [the civil action against Defendants and the probate litigation over both Decedents' estates].[53]

The settlement agreement further provides that it "is intended to cover and does cover not only all known injuries, losses, costs and damages, but any future injuries, losses and damages by [Plaintiffs] which arise from or are in any manner related to legal representation, counsel, advice or otherwise by any action or omission of [Defendants] [or] their agents . . . ."[54]

The settlement agreement requires Defendants to "review all invoices submitted to her by [Plaintiffs] as creditors of the [Blusius and Kotran estates] for reimbursement of amounts expended by them on behalf of the said [e]state[s], and to reimburse the same if they are found to be legitimate estate expenses."[55]  The agreement does not "effect or impact [Plaintiffs'] inheritance rights as beneficiaries

---

[53] *Id.* ¶ 1.
[54] *Id.* ¶ 2.
[55] *Id.* ¶ 9.

of the [Blusius or Kotran estates]" and "does not affect any claims asserted by [Plaintiffs] regarding any accounting prepared by Andrea Reed. . . ."[56]  The agreement contains also contains a merger clause.[57]

From the state court filings, it appears that after entering the settlement agreement, Defendants refused to pay Plaintiffs until Plaintiffs filed praecipes dismissing the state court litigation, which was filed on March 20, 2018.[58]  However, the probate litigation continued, and various court filings indicate that Defendants' alleged breaches of the settlement agreement were still an active matter in state court.[59]  Plaintiffs claim that Defendants put them under duress to procure dismissal of the state court litigation.[60]  Plaintiffs additionally aver before this Court that Defendants have breached the settlement agreement  by failing to reimburse them for estate expenses.[61]  It appears to the Court that the state court litigation is now stayed pending this Court's decision.[62]

### E.    Procedural History

Plaintiffs filed suit in June 2021 and then later moved to amend their pleadings.[63]  In their operative Complaint, Plaintiffs allege breach of the settlement agreement (Count I), negligence per se (Count II), breach of fiduciary duty (Count

---

[56]   *Id.*
[57]   *See id.* ¶ 11.
[58]   *See* Doc. 15-3 at 2.
[59]   *See* Doc. 22-1 at 2-3.
[60]   *See* Compl. Doc. 22 ¶ 3; Doc. 30-19 at 3-4.
[61]   Compl. Doc. 22 ¶ 6(c).
[62]   *See* Doc. 30-19 at 4-5.
[63]   Compl. Doc. 22.

IV), and tortious interference with inheritance as to each sister's estate (Counts V and VI).[64]  Plaintiffs also seek special damages (Count III).[65]

Defendants now move to dismiss those claims on several grounds. Defendants first argue under Federal Rule of Civil Procedure 12(b)(1) that the Court is without subject matter jurisdiction to hear Plaintiffs' claims or that they are barred by the *Rooker-Feldman* doctrine.[66]  In the alternative, Defendants have requested that the Court abstain and stay the matter.[67]

Defendants also move for failure to state a claim under Rule 12(b)(6), arguing (1) Plaintiffs' claims are barred by a prior settlement agreement between the parties, (2) several of the claims are barred by the doctrine of *res judiciata*, (3) Plaintiffs have failed to state a claim for negligence, and (4) several of the claims are time-barred.[68]  Lastly, Defendants move to strike aspects of Plaintiffs' Opposition Brief under Rule 12(f).[69]

---

[64]  *Id.* ¶¶ 46-89, 94-116.
[65]  *Id.* ¶¶ 90-93.
[66]  Defs' Mot. to Dismiss Doc. 24 ¶¶ 42-48.
[67]  *Id.* ¶¶ 57-62.
[68]  *Id.* ¶¶ 31-41, 49-56.
[69]  *Id.* ¶¶ 22-27.

## II.   ANALYSIS

### A.   Whether the Court Has Jurisdiction Over Plaintiffs' Claims.

#### 1.   Standard Governing Defendants' Rule 12(b)(1) Motion

Defendants advance two jurisdictional arguments the Court considers here: (1) Plaintiffs' claims are probate matters and thus not within federal jurisdiction; and (2) if the Court has jurisdiction, it should abstain and stay the matter.

Resolution of Defendants' first argument regarding the probate exception is a "facial attack" on the Court's jurisdiction, and thus the Court will accept all the allegations in Plaintiffs' Complaint as true for the purposes of Defendants' probate exception argument.[70]

However, the Court considers Defendants' abstention argument a "factual attack," as it necessarily delves into what occurred in the state court litigation.  Thus, the Court "may weigh and 'consider evidence outside the pleadings.'"[71]

#### 2.   Application

Defendants assert that the Court is without jurisdiction to hear Plaintiffs' claims because Plaintiffs seek to have this Court "assume *in rem* jurisdiction over

---

[70]   *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

[71]   *Id.* (quoting *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)).  Plaintiffs reference numerous filings and orders from the state court litigation in their Complaint but have not provided several of them to the Court.  The Court relies upon two documents outside of the pleadings.  The first is the state court litigation complaint, which Defendants attached to their motion, *see* Doc. 15-1, and to which Plaintiffs have responded.  The second is the docket sheet for the state court litigation, which the Court obtained from the state court to access documents the Plaintiffs referenced in their Complaint.  The Court notes that Plaintiffs are represented by the same counsel in the state court litigation.

12

the estates' property which is in the custody of the Franklin County Orphans' Court" and because Plaintiffs seek to "annul a probated will and challenge the administration of [D]ecedents' estates."[72]

Even when diversity jurisdiction is otherwise proper, federal courts lack subject matter jurisdiction over pure probate matters under what is termed the "probate exception" to diversity jurisdiction.[73] "Pure" probate matters are a narrow category. The probate exception constrains federal diversity jurisdiction in two ways. First, "the probate or annulment of a will and the administration of a decedent's estate" is reserved to state probate courts.[74] Second, federal courts cannot "dispose of property that is in the custody of a state probate court."[75]

In this matter, the facts underlying each of the Counts in the Complaint are largely the same. They all concern Defendants' performance as the sisters' estate planning attorneys and their conduct in administering the estates. Yet it is not entirely clear from their Complaint whether Plaintiffs seek to probate a will or dispose of property already in the Orphans' Court's custody.[76]

---

[72]  Def's Br. Doc. 27 at 21-23.

[73]  *Markham v. Allen*, 326 U.S. 490, 494 (1946) ("[A] federal court has no jurisdiction to probate a will or administer an estate.").

[74]  *Marshall v. Marshall*, 547 U.S. 293, 311 (2006).

[75]  *Id.* at 312.

[76]  In Counts I, III, IV, and VI, Plaintiffs specify that they seek "any other damages or recovery permissible under Pennsylvania or [f]ederal [l]aw." Compl. Doc. 22 at 36, 37, 38, 42, 43. By contrast, in Count II (negligence per se), Plaintiffs request only monetary damages in excess of $75,000. *Id.* at 38.

Throughout their Complaint, Plaintiffs seem to suggest at least some of the relief they seek comes from estate assets or delves into administration of the estates.[77]  Most notably, in Count I (breach of the settlement agreement), Plaintiffs allege that Defendants "continue to breach the [s]ettlement [a]greement by failing to probate the 1962 will" and that "pursuant to Title 20 [of the Pennsylvania Consolidated Statutes], Plaintiffs' expenses should be reimbursed, through an independent [e]xecutrix process."[78]

Even if Defendants are obligated to do so by virtue of the settlement agreement, the Court concludes that it is without jurisdiction to order Defendants to probate the correct will, order Defendants to reimburse Plaintiffs for valid estate expenses (or determine what expenses are valid expenses), or order the instatement of an independent executrix.  These actions would interfere with administration of the estates, which are already under the jurisdiction of the Orphans' Court of

---

[77]  *See, e.g.*, *id.* ¶¶ 49 (alleging in Count I that "Defendant Hawbaker . . . negotiated said settlement agreement . . . which was to include Plaintiffs' receipt of four separate obligations never fulfilled, including, (a) to correct [the] inheritance for Plaintiffs in [the] Blusius [estate matter]; (b) [to] correct inheritance for Plaintiffs in [the] Kotran [estate matter]; [and] (c) reimbursement of estate expenses incurred by Plaintiffs"); 83-86 ( alleging in Count II that "Defendants have not performed under the settlement agreement and the Praecipes are not valid which does not eliminate all the breaches of the [Settlement] [A]greement," that "Defendants remain in contempt of court orders to . . . reimburse the Plaintiffs for estate expenses" and that "Defendant failed to marshal all the estate assets of the Kotran estate even though paid to doing so and provide the correct inheritance to the Heirs"); 102 (alleging in Count IV that "[p]ursuant to the [s]ettlement [a]greement, Defendant Hawbaker, as Executrix, had a duty to . . . their [h]eirs, namely Plaintiffs herein, to ascertain and distribute the estates' assets and ensure the [h]eirs would receive their rightful inheritances, but since the Defendants' duties conflicted, for which no waiver was obtained, Defendants failed to complete the [e]states' administration, not marshalling the assets, breaching the [s]ettlement [a]greement").

[78]  *Id.* ¶ 71, 77.

Franklin County.[79]  Thus, to the extent that Plaintiffs seek any proceeds from the Decedents' estates or any relief that would interfere with the administration of those estates, the Court concludes that it is without jurisdiction to provide such relief.[80]

However, other claims appear to be claims for *in personam* judgments against the Defendants for losses they caused to the estate, particularly Counts V and VI (tortious interference with inheritance).  Those Counts allege the same tort action that the Supreme Court of the United States held was not subject to the probate exception in *Marshall v. Marshall*.[81]  Similarly, the United States Court of Appeals for the First Circuit concluded that federal courts have jurisdiction over claims that would returning funds or assets wrongfully removed from decedents' estates as those claims also do not require a federal court to administer a decedent's estate or distribute estate property.[82]  Accordingly, the Court has jurisdiction over Plaintiffs' claims that seek to hold Defendants liable for assets removed from the estates.

Therefore, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted in part to the extent that Counts I through IV seek administration of Decedents' estates or probate of the correct will, and denied in part

---

[79]   *See In re Testamentary Tr. Created Under Last will and Testament of Ischy*, 415 A.2d 37, 42-43 (Pa. 1980) (explaining that "the determination of what compensation is fair and just in a particular case is a task we have consistently and necessarily left to the sound discretion of the chancellor"); 20 PA. CONS. STAT. § 711(12) (vesting jurisdiction over "allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphans' court division . . . .").

[80]   *See Marshall*, 547 U.S. at 312.

[81]   *See id.* at 314.

[82]   *Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 22-24 (1st Cir. 2010).

as to all Counts, to the extent that they seek damages that do not include funds within Decedents' estates.

## B.   Whether the Court Should Abstain

In light of the Court's conclusion that it has jurisdiction over some aspects of Plaintiff's Complaint, the Court notes the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."[83]   "This principle is no less true in cases where, as here, there is a parallel litigation in a state court."[84]

### 1.   *Younger* Abstention

Defendants argue that the Court should abstain under *Younger v. Harris*[85] due to the parallel litigation in state court.[86]   *Younger* abstention is only available in three narrow categories: (1) where federal intervention would "intru[de] into ongoing state criminal prosecutions," (2) in "certain civil enforcement proceedings," and (3) where federal intervention would "interfer[e] with pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'"[87]   As this matter implicates none of those categories and Defendants have not argued that it does, the Court concludes that *Younger* abstention is unwarranted.

---

[83]   424 U.S. 800, 817 (1976).
[84]   *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997).
[85]   401 U.S. 37 (1971).
[86]   Def's Br. Doc. 27 at 37-38.
[87]   *Sprint Commun., Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

### 2.   *Colorado River* Abstention

However, the Supreme Court in *Colorado River Water Conservation District v. United States* provided "that there are certain extremely limited circumstances in which a federal court may defer to pending state court proceedings based on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"[88]  *Colorado River* abstention is proper only in "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."[89]

### a.   Whether the State Court Litigation Constitutes Parallel Litigation

The first step in the *Colorado River* abstention analysis is to determine whether the litigation in state court is parallel to the federal court litigation.[90] "Generally, cases are parallel when they involve the same parties and claims."[91] Here, both this federal litigation and the state court litigation involve the same parties in the same posture.[92]

As for the claims, the Court notes that Counts V and VI (tortious interference with inheritance) of Plaintiff's Complaint are identical to Counts VII and VIII in the

---

[88]  *Colorado River*, 424 U.S. 818.
[89]  *Id.* at 813.
[90]  *See Ryan*, 115 F.3d at 196.
[91]  *Id.*
[92]  *Compare* Compl. Doc. 22 ¶¶ 17-18, *with* Doc. 30-19 ¶¶ 1-4.

complaint Plaintiffs filed in Franklin County.[93]   Count IV of Plaintiffs' Complaint alleges a breach of fiduciary duty as to both Decedents' estates; Counts II and IV of the state court complaint allege a breach of fiduciary duty as to each Decedent's estate.[94]

The factual allegations throughout the Complaint are largely the same factual allegations found in the state court complaint.  Counts I through VI of the state court complaint all relate to Defendants' performance in planning and administering the Decedents' estates.[95]  Furthermore, in their Complaint, Plaintiffs rely on many of the same exhibits referenced in the state court litigation complaint.[96]  Lastly, Plaintiffs admit that the status of the 2003 and 2005 wills, objections to the accounting of both Decedents' estates and Reed's actions, and maladministration of the estates all "remain open" in state court.[97]

---

[93]  *Compare* Compl. Doc. 22 ¶¶ 108-16, *with* Doc. 15-1 ¶¶ 156-163.

[94]  *Compare* Compl. Doc. 22 ¶¶ 94-106, *with* Doc. 15-1 ¶¶ 80-83, 90-93.

[95]  *Compare* Compl. Doc. 22 ¶¶ 41(a)-(e) (alleging Defendants' actions reduced the Blusius heirs inheritance from $20,000 to $14,000), *with* Doc. 15-1 ¶¶ 54 (same); *compare* Compl. Doc. 22 ¶ 41(i) (alleging that Defendants allowed Blusius to create wills while incompetent), *with* Doc. 15-1 ¶¶ 36, 39, 104, 109 (relating to the 2003 will that Plaintiffs challenge as invalid); *compare* Compl. Doc. 22 at 3, ¶¶ 5(h), 37, 41(d), 43(f), 43(n), 44, 45, 62, 63, 65-67, 70, 78, 103 (relating to Reed's conduct with Defendants' involvement), *with* Doc. 15-1 ¶¶ 43-47, 50-51, 58, 63-65, 68(a), 69, 71, 113, 134-39 (similar); *compare* Compl. Doc. 22 ¶¶ 53-56, 86 (alleging improper accounting of and failure to marshal assets of the Kotran estate), *with* Doc. 15-1 ¶¶ 13-24, 76(e)-(k), 77, 82, 86-88, 95-105 (similar); *compare* Doc. 22 ¶¶ 44-45, 57-68, 86, 95-105 (alleging improper accounting of and failure to marshal assets of the Blusius estate), *with* Doc. 15-1 ¶¶ 68-72, 82, 90-93, 113, 117-22, 143-44, 147-54 (similar).

[96]  *Compare* Compl. Doc. 22 ¶¶ 36-37, 43(c), 55 (concerning an accounting report of the Kotran estate by Boyer & Ritter, LLC), *with* Doc 15-1 ¶¶ 15, 70, 76(b), 86(b); *compare* Compl. Doc. 22 ¶¶ 43(b)-(d), 43(k)-(m), 67(b) (concerning the opinion of Dr. Swartz, Blusius' family physician, on her mental condition), *with* Doc. 15-1 ¶¶ 41-46 (same).

[97]  *See* Compl. Doc. 22 ¶ 7.

The only new claims relate to the breach of the settlement agreement. But any claims relating to Defendants' obligations under the settlement agreement to reimburse Plaintiffs for estate expenses or provide Plaintiffs with their "correct" inheritances necessarily call for the distribution of estate assets or the probate of Decedents' wills, and, as noted above, the Court does not have jurisdiction over these claims. Moreover, it appears to the Court that any potential breaches of the settlement agreement are also being litigated in state court.[98] Thus, the Court concludes that this federal litigation is parallel with the state court litigation.

### b.   Application of the *Colorado River* Abstention Factors

The Supreme Court provided several factors for federal courts to balance when considering *Colorado River* abstention.[99] These factors include:

(1) Which court first assumed jurisdiction over property involved, if any;

(2) Whether the federal forum is inconvenient;

(3) The desirability of avoiding piecemeal litigation;

(4) The order in which the respective courts obtained jurisdiction;

(5) Whether federal or state law applies; and

(6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.[100]

---

[98]   *See* Doc. 22-1 (ordering that alleged breaches of the settlement agreement will be resolved at mediation).
[99]   *See Colorado River*, 424 U.S. 818-19.
[100]   *See Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983).

Other circuits have identified additional factors: "(7) [t]he relative progress of the state and federal proceedings; (8) [t]he presence or absence of concurrent jurisdiction; (9) [t]he availability of removal; and (10) [w]hether the federal action is vexatious or contrived."[101]   "No one factor is necessarily determinative" but "[o]nly the clearest of justifications will warrant dismissal."[102]

The first factor weighs in favor of abstention is that the Franklin County Orphans' Court has assumed jurisdiction over both Decedents' estates and the estate property.[103]   However, this factor is due less weight as the Court has already determined that it is without jurisdiction to hear any claims that relate to property in the custody of the Orphans' Court.  Therefore, the Court concludes that this factor is neutral.

As for the convenience of the federal forum, the second factor, the Court concludes that this factor is neutral.  Both fora are convenient for the parties and their counsel.

For purposes of assessing whether abstention will avoid piecemeal litigation, the United States Court of Appeals for the Third Circuit has explained that a

---

[101] *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020); *see also U.S. v. Fairway Capital Corp.*, 483 F.3d 34, 40 (1st Cir. 2007).

[102] *Colorado River*, 424 U.S. 818-19.

[103] *See id.* at 819 ("[T]he concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property.").

"'strongly articulated congressional policy against piecemeal litigation' is required to justify a stay."[104]

The Court notes that the Supreme Court in *Marshal v. Marshalll* linked the probate exception to the Judiciary Act of 1789, reasoning that Congress never granted the federal courts jurisdiction over probate matters.[105]  Therefore, although the exception itself does not exclude all of Plaintiffs' claims from federal jurisdiction, it does represent a form of congressional policy against federal intervention into probate matters.  Accordingly, the Court concludes that this factor weighs in favor of abstention—albeit only mildly.  The Court emphasizes that it does not place a great deal of weight on this factor given the lack of clear congressional policy.

On the fourth factor, the order in which the two courts assumed jurisdiction, the Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* made clear that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."[106]  Accordingly, the Court will discuss both the order of

---

[104] *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172 (3d Cir. 1999) (quoting *Ryan*, 115 F.3d at 198).

[105] *See* 547 U.S. 306.

[106] *Id.* at 21; *see also DePuy*, 953 F.3d at 47 (listing the "relative progress" of the two litigations as a factor).

jurisdiction and the relative progress (factor seven) together.  Here, the state court actions were initiated first and are "running well ahead" of the federal litigation.[107]

From the state court dockets, the Court observes that the probate litigation over the Kotran estate began in 2006, the litigation over the Blusius litigation in 2013, and Plaintiffs' civil claims against Defendants were filed in 2014.  Plaintiffs initiated this action in 2021.[108]

As for the relative progress of the parallel actions, the state court litigation has seen discovery, dispositive motions by both sides, various orders, and a pretrial conference in 2017.[109]  The last substantive order was a rule to show cause against Defendants in June 2021, the same month they filed their first Complaint in this court.

From the filings provided by Plaintiffs, it is clear that every issue raised in the Complaint is being actively litigated in state court, including the breach of the settlement agreement, the only claim not included in the state court complaint.[110]  In the federal case the only filings include Plaintiffs' Complaint, once amended, and

---

[107] *Moses H. Cone*, 460 U.S. 22.

[108] Doc. 1 at 1.

[109] During the discovery phase of the state court litigation, the parties took depositions, submitted expert reports, and filed various motions to compel discovery.  Outside of discovery, the parties filed several pretrial motions, including motions in limine, a motion to disqualify Judge Myers, several motions for reconsideration of prior orders, status conferences, and numerous briefs. The state court has held several hearings and it appears the parties were about to begin or in the midst of court-ordered mediation.

[110] *See* Doc. 22-1 (allowing for consideration at court-ordered mediation "reimbursement of estate expenses paid by [Plaintiffs]," and the "alleged breach of the original [s]ettlement [a]greement," probate of the "correct [w]ill," among other issues).

Defendant's motion to dismiss, along with several ancillary procedural motions. Moreover, Plaintiffs' Complaint concerns Defendants' conduct in the probate litigation—which is still ongoing. [111]   Therefore, consideration of the issues in a unified proceeding will be the best use of judicial resources.

It is manifestly clear that the "controversy appear[s] to be closer to a resolution in the state proceedings than in the federal," and that "allowing the two suits to proceed concurrently would waste the parties' resources, risk duplicative rulings and reward a strategic gamesmanship that has no place in a dual system of federal and state courts."[112]   Accordingly, this factor strongly weighs in favor of abstention and the Court affords significant weight to it given the complexity and length of the state court litigation.[113]

Turning to the fifth factor, the applicable law, the Supreme Court in *Moses H. Cone* noted that "[a]lthough in some rare circumstances the presence of state-law

---

[111]  *See* Compl. Doc. 22 ¶¶ 81 ("As a result [of Defendants' breaches of the settlement agreement,] the Plaintiffs continue to incur legal fees and costs for the ongoing breaches and insurmountable conflicts . . ."); 84 ("Defendants are in violation of Title 20 probate laws as they continue to probate a Blusius 2003 will that was supposed to be destroyed and was executed when Blusius was incompetent . . . ."); 85 ("Defendants remain in contempt of court orders to provide a complete and correct [a]ccount for the Blusius and Kotran [estates] . . . and reimburse the Plaintiffs for estate expenses . . . .").

[112]  *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 756 (7th Cir. 2006) (affirming abstention in similar circumstances where "the claims in the federal and state suits are predicated on the same facts and will be resolved largely by reference to the same evidence").

[113]  *See Colorado River*, 424 U.S. 820 (concluding that the "the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss" weighed in favor of abstention); *Romine v. Compuserve Corp.*, 160 F.3d 337, 341-42 (6th Cir. 1998) (affirming abstention in similar circumstances where state court litigation had progressed to discovery and federal litigation was in pleading stage); *Jimenez v. Rodriguez-Pagan*, 597 F.3d at 31 (similar);  *Tyrer*, 456 F.3d at 755 (similar); *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) (similar).

issues may weigh in favor of that surrender [of jurisdiction], the presence of federal-law issues must always be a major consideration weighing against surrender."[114] Here, Plaintiff raises no federal issues. Pennsylvania law controls all of Plaintiffs claims. Therefore, this factor also weighs in favor of abstention.

The Court next considers the sixth factor, whether Plaintiffs' interests will be adequately protected by the state court. The Third Circuit in *Ryan v. Johnson* explained that "this factor is normally relevant only when the state forum is *in*adequate" and thus normally only serves to marshal against abstention.[115] Plaintiffs argue that the state court is inadequate as it is without jurisdiction over assets not within the estate.[116] In state court, they argued that this Court should decide issues related to the breach of the settlement agreement as the Orphans' Court does not have jurisdiction over those claims.

Plaintiffs ignore the fact that their allegations regarding the breach of the settlement agreement are essentially the same allegations raised in their state court complaint. The Franklin County Court of Common Pleas has "unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage."[117] Plaintiffs further ignore that the state court is *currently* considering Defendants' alleged breaches of the settlement

---

[114] *Moses H. Cone*, 460 U.S. 26 (citations omitted).
[115] *Ryan*, 115 F.3d at 200 (emphasis in original).
[116] Compl. Doc. 22 at 3, ¶¶ 5(d), 8; Plfs' Opp'n Br. Doc. 30 at 11.
[117] 42 PA. CONS. STAT. § 931

agreement and is empowered to award them all of the relief they seek. The Pennsylvania courts are certainly well-equipped to protect Plaintiffs' interest. Accordingly, this factor does not weigh against abstention.

The eighth factor, the presence of concurrent jurisdiction, is most relevant when there is an issue raised over which the federal courts have exclusive jurisdiction.[118] Here, the reverse is true. The Pennsylvania courts have exclusive jurisdiction over issues related to the administration of the Decedents' estates and distribution of property belonging to the estates by virtue of the probate exception.[119] In any event, the Court will consider this factor neutral as it does not have jurisdiction over the estates.

The ninth factor is the availability of removal. The unavailability of removal weighs against abstention.[120] Defendants are precluded from removing the state case against them as they are in their home state of Pennsylvania.[121] It is not entirely clear that Defendants wish to be in federal court considering that they requested the Court's abstention. However, removal is nevertheless unavailable to them. Accordingly, this factor weighs against abstention.

Lastly, the Court considers the tenth factor, whether the filing of the federal complaint was "vexatious" or "reactive" to adverse state court rulings in an effort to

---

[118] *See will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978).
[119] 20 PA. CONS. STAT. § 711.
[120] *DePuy*, 953 F.3d at 479.
[121] *See* 28 U.S.C. § 1442(b)(2).

"attempt to forum shop or avoid adverse rulings by the state court."[122]   The Court concludes that this factor is neutral as it does not appear that Plaintiffs are acting in bad faith.[123]

After the balancing the factors, the Court concludes that they weigh in favor of abstention.  These circumstances—particularly the significant progress of similar claims in state court—present the "exceptional circumstances" justifying abstention.[124]

When abstaining, however, federal courts may only dismiss or remand actions at equity.[125]  Actions at law must be stayed.[126]  As Plaintiffs seek monetary damages, the Court will stay this matter pending the resolution of the state court litigation. The Court will reserve decision on all other aspects of Defendants' motion to dismiss.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.  This matter is stayed pending the resolution of matters docketed at Nos. 134-OC-2006, 46-OC-2013, and 2014-710 before President Judge Myers in the Franklin County Court of Common Pleas.

---

[122]   *Nakash*, 882 F.2d at 1417.
[123]   However, the Court is concerned with the prospect of beginning anew and in piecemeal fashion litigation that has been steadily progressing in the Pennsylvania state court for a lengthy period and does not wish to encourage such a practice.
[124]   *Colorado River*, 424 U.S. 813.
[125]   *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996).
[126]   *Id.*

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge